# UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

_____
MELVIN DELANEY, JR., *et al.*,      )
                        )
           **Plaintiffs,**      )
                        )
    **v.**                  )     **Civil Action No. 08-1651 (RMC)**
                        )
**DISTRICT OF COLUMBIA, *et al.*,**    )
                        )
           **Defendants.**     )
_____)

## MEMORANDUM OPINION

Melvin Delaney, Jr. and Melodie Venee Shuler, husband and wife, bring this suit *pro se* on behalf of themselves and their child M. Delaney. The Complaint alleges numerous violations of federal and local law, mostly arising from Mr. Delaney's admitted failure to pay child support and a resulting criminal contempt charge against him. The District of Columbia and its officials and employees move to dismiss for failure to state a claim and for lack of jurisdiction. As explained below, the motion to dismiss will be granted, except with regard to Count 12 of the Complaint.

## I. FACTS

The Complaint sets forth numerous claims that are somewhat difficult to decipher and Plaintiffs' responses to the Defendants' motion to dismiss do little to clarify them. Plaintiffs' claims generally arise from a District of Columbia criminal contempt action against Mr. Delaney due to unpaid child support and from difficulties Ms. Shuler encountered when she and their child, M. Delaney, attempted to visit Mr. Delaney while he was held at the D.C. Jail. Ms. Shuler is an attorney, and she sought to assist Mr. Delaney in dealing with his legal

problems.

Plaintiffs allege that Mr. Delaney was incarcerated at the Lorton and Rivers

Correctional Centers from 2001 to June of 2003 and at the D.C. Jail from May 29, 2007 to

September 25, 2007.  Compl. ¶¶ 19-20.  They allege that Mr. Delaney could have been exempted

from liability for child support during these periods if he had been provided access to the courts

or the assistance of adequate counsel, or if he had been able to receive visits by and assistance

from Ms. Shuler.  *Id*. ¶¶ 19-38.

As a result, Plaintiffs filed a Complaint against the District of Columbia and

certain D.C. officials and employees.  The District and the following D.C. officials and

employees move to dismiss the Complaint:  Mayor Adrian Fenty; former Deputy Warden Brenda

Ward of the D.C. Department of Corrections ("DOC"), DOC Captain Nora Talley; and former or

current Assistant Attorneys General for the District Michael Orton, Arden Harris, and Nancy

Johnson[1] (collectively the "District Defendants").[2]

The Counts of the Complaint that purport to allege claims against the District

Defendants assert the following causes of action:

Count 1 – Fifth Amendment Due Process;

Count 2 – Fraud;

Count 4 – Fifth Amendment Due Process;

---

[1] Nancy Johnson is the supervisor of Messrs. Orton and Harris.

[2] The Complaint also names former D.C. Mayor Anthony Williams, but there is no evidence that the former Mayor was ever served and thus counsel for the District did not file pleadings on his behalf.  Even so, all allegations against him will be dismissed because there are no allegations that he was personally involved in any of the constitutional violations alleged in the Complaint.  *See infra*, section III. A. of this Opinion.

Count 5 – Fifth Amendment Due Process;

Count 6 – First Amendment;

Count 7 – Negligence;

Count 10 – First Amendment;

Count 11 – Fourth Amendment;

Count 12 – Fifth Amendment Due Process;

Count 13 – Fifth Amendment Due Process;

Count 14 – Fifth Amendment Due Process;

Count 15 – Fifth Amendment Due Process;

Count 16 – Defamation, Libel and Slander;

Count 18 – Intentional Infliction of Emotional Distress;

Count 19 – Fifth Amendment Due Process and Sixth Amendment
Right to Counsel; and

Count 21 – Negligent Training and Supervision.[3]

Plaintiffs seek monetary, declaratory, and injunctive relief with regard to these claims. *See id*. at

p. 80.  The details of the allegations are discussed below in the analysis of each legal theory.

## II.  LEGAL STANDARDS

### A.  Failure to State a Claim

A motion to dismiss pursuant to Federal Rule of Civil Procedure 12(b)(6)

challenges the adequacy of a complaint on its face, testing whether a plaintiff has properly stated

---

[3] Counts 3, 8, 9, 17, and 20 are not listed here, as these counts do not contain allegations against the District Defendants. The Complaint also alleges violations of the District of Columbia constitution.  *See* Compl. ¶¶ 30-31.  There is no such constitution.

a claim.  Federal Rule of Civil Procedure 8(a) requires that a complaint contain "a short and plain statement of the claim showing that the pleader is entitled to relief."  Fed. R. Civ. P. 8(a).  A complaint must be sufficient "to give a defendant fair notice of what the . . . claim is and the grounds upon which it rests."  *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (internal citations omitted).  Although a complaint does not need detailed factual allegations, a plaintiff's obligation to provide the grounds of his entitlement to relief "requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do."  *Id.*  Rule 8(a) requires a "showing" and not just a blanket assertion of a right to relief.  *Id.* at n.3.

A court must treat the complaint's factual allegations as true, "even if doubtful in fact," *id*. at 1965, and must draw all reasonable inferences in the plaintiff's favor.  *Macharia v. United States*, 334 F.3d 61, 64, 67 (D.C. Cir. 2003).  Even so, the facts alleged "must be enough to raise a right to relief above the speculative level," *Twombly*, 550 U.S. at 555, and a court need not accept as true inferences unsupported by facts set out in the complaint or legal conclusions cast as factual allegations.  *Browning v. Clinton*, 292 F.3d 235, 242 (D.C. Cir. 2002).  "[A] complaint needs *some* information about the circumstances giving rise to the claims."  *Aktieselskabet Af 21. Nov. 2001 v. Fame Jeans, Inc.*, 525 F.3d 8, 16 n.4 (D.C. Cir. 2008) (emphasis in original).

## B.  Lack of Jurisdiction

On a motion to dismiss for lack of subject matter jurisdiction pursuant to Federal Rule of Civil Procedure 12(b)(1), the plaintiff bears the burden of establishing that the court has subject matter jurisdiction.  *Evans v. B.F. Perkins Co.*, 166 F.3d 642, 647 (4th Cir. 1999); *McNutt v. Gen. Motors Acceptance Corp.*, 298 U.S. 178, 182-83 (1936).  Because subject matter

jurisdiction focuses on a court's power to hear the claim, however, a court must give a plaintiff's factual allegations closer scrutiny when resolving a Rule 12(b)(1) motion than would be required for a Rule 12(b)(6) motion for failure to state a claim. *Macharia,* 334 F.3d at 64 & 69; *Grand Lodge of Fraternal Order of Police v. Ashcroft*, 185 F. Supp. 2d 9, 13 (D.D.C. 2001). A court is not limited to the allegations contained in the complaint. *Hohri v. United States*, 782 F.2d 227, 241 (D.C. Cir. 1986), *vacated on other grounds*, 482 U.S. 64 (1987), but may consider materials outside the pleadings. *Herbert v. Nat'l Acad. of Scis.*, 974 F.2d 192, 197 (D.C. Cir. 1992).

### III.  ANALYSIS

#### A.  Section 1983 Claims Against Mayor Fenty, Deputy Warden Ward, and Supervising Assistant AG Johnson (Complaint Generally and Count 21)

Plaintiffs seek to hold liable Mayor Fenty, Deputy Warden Ward, and Supervising Assistant AG Johnson for the allegedly unconstitutional actions of other D.C. employees via 42 U.S.C. § 1983.[4]  Plaintiffs also seek to hold liable Mayor Fenty, Deputy Warden Ward, and Supervising Assistant AG Johnson for failing to supervise and train employees, resulting in alleged violations of their constitutional rights, under § 1983. *See* Compl. ¶¶ 271-278 (Count 21).

---

[4] Section 1983 provides a cause of action against a defendant who, acting under color of state law, deprived a plaintiff of a constitutional right. *West v. Atkins*, 487 U.S. 42, 48 (1988); *Parratt v. Taylor*, 451 U.S. 527 (1981), *overruled in part on other grounds*, *Daniels v. Williams*, 474 U.S. 327 (1986). Plaintiffs sue the District officials in their official and individual capacities. A suit against an individual in his official capacity under 42 U.S.C. § 1983 is not a suit against the official, but a suit against the official's office, *Will v. Michigan Dep't of State Police*, 491 U.S. 58, 71 (1989), and a plaintiff's claims against a defendant in his official capacity are treated as claims against the municipality. *See Kentucky v. Graham*, 473 U.S. 159, 166 (1985); *Atchison v. District of Columbia*, 73 F.3d 418, 424 (D.C. Cir. 1996). Thus, the Court will treat the suit against Mayor Fenty and the other D.C. employees in their official capacities as a suit against the District of Columbia itself, and will dismiss the suit against them in their official capacities.

The § 1983 claims against these officials fail because (1) there are no allegations that any of these Defendants was personally involved in any of the alleged violations of Plaintiffs' constitutional rights and (2) they cannot be held liable under § 1983 for the actions of their subordinates on the basis of *respondeat superior*. *Monell v. Dep't of Social Servs.*, 436 U.S. 658, 694 (1978); *Morgan v. District of Columbia*, 550 F. Supp. 465, 468 (D.D.C. 1982), *aff'd without op.*, 725 F.2d 125 (D.C. Cir. 1983) (Table). A supervisor can be held liable for a constitutional violation only if a plaintiff can demonstrate: (1) a grave risk of harm; (2) the supervisor's own actual or constructive knowledge of that risk; and (3) the supervisor's own failure to take available measures to address the risk. *Maldonado-Denis v. Castillo-Rodriquez*, 23 F.3d 576, 582 (1st Cir. 1994). Plaintiffs have not so alleged. Thus, Mayor Fenty, Deputy Warden Ward, and Supervising Assistant AG Johnson will be dismissed as defendants in this case. Similarly, Count 21 of the Complaint, alleging § 1983 liability for failure to train or supervise, will be dismissed.

### B. Section 1983 Claims Against D.C., Captain Talley, and Assistant AGs Orton and Harris

### 1. Domestic Relations Exception to Jurisdiction

Counts 1, 4, and 5 of the Complaint allege that Mr. Delaney's Fifth Amendment right to due process[5] was violated when the District and its officials allegedly: failed to follow applicable child support guidelines in assessing the arrearage of his child support payments, Compl. ¶¶ 43, 68, & 76; provided allegedly false court orders for garnishment to Mr. Delaney's

---

[5] The Due Process Clause of the Fifth Amendment applies to the District of Columbia as a federal enclave. *Propert v. District of Columbia*, 948 F.2d 1327, 1330 n.5 (D.C. Cir. 1991) (citing *Bolling v. Sharpe*, 347 U.S. 497, 499 (1954)).

employers, *id*. ¶ 44; misallocated the child support payments among his various children, *id*.;

failed to conduct an investigation before pursuing child support payments from him, *id*. ¶¶ 45-46

& 90; suborned perjury by Bernadette White[6] in the child support enforcement proceeding, *id*.

¶ 47; inaccurately calculated his period of probation when he was transferred to the custody of

D.C. from Maryland on the criminal contempt charge, causing him to lose wages, *id*. ¶ 48;

improperly incarcerated him for missing a court date, *id*. ¶ 49; sent an incorrect hearing notice

regarding the enforcement proceeding, *id*. ¶ 50; failed to file court documents in the correct court

file and failed to release certain monies, *id*. ¶¶ 51-55; failed to post child support payments made

by Ms. Shuler on Mr. Delaney's behalf, *id*. ¶¶ 56 & 78-83,[7] failed to pursue child support

benefits for M. Delaney, *id*. ¶ 57-58; and refused to enter a plea bargain "based on [Mr.

Delaney's] marital status," *id*. ¶¶ 60 & 84-100.

        As can be seen, many of Mr. Delaney's claims essentially seek to enjoin the

enforcement of his child support obligations and/or to have those obligations modified or

recalculated.  With regard to such claims, the Court lacks jurisdiction under the domestic

relations exception to federal jurisdiction.  The domestic relations exception divests federal

courts of the power to issue divorce, alimony, and child custody decrees, *Ankenbrandt v.

Richards*, 504 U.S. 689, 703 (1992), or to determine child support obligations, *Bennett v.

Bennett*, 682 F.2d 1039, 1042 (D.C. Cir. 1982).  Accordingly, the Court must dismiss for lack of

---

[6] Ms. White is the mother of the children who were owed the child support.  Mr. Delaney asserts that he was incarcerated from 2001 to June 2003, and Ms. White testified that he was not incarcerated from November 1998 to June 2003.

[7] Plaintiffs also contend that these actions interfered with family relations "because of the strain it placed on the family by the agency [sic] failure to post the money it caused tension in the relationship." Compl. ¶ 33.

jurisdiction all claims seeking to enjoin the enforcement of child support orders or to amend those child support orders.

### 2. Abstention From Claims Seeking Declaratory or Injunctive Relief

Mr. Delaney also claims that the District and its employees violated his Fifth Amendment right to due process in the child support enforcement proceedings and that this Court should remedy the violation by granting declaratory and injunctive relief.  With regard to this claim, the Court is required to abstain from interfering with an ongoing proceeding in Superior Court under the *Younger* doctrine.  *See District Props. Assocs. v. District of Columbia*, 743 F.2d 21, 27 (D.C. Cir. 1984) (citing *Younger v. Harris*, 401 U.S. 37 (1971)); *see also JMM Corp. v. District of Columbia*, 378 F.3d 1117 (D.C. Cir. 2004) (*Younger* abstention applies to District of Columbia proceedings).  The Supreme Court held in *Younger* that:

> [E]xcept in extraordinary circumstances, a federal court should not enjoin a pending state proceeding (including an administrative proceeding) that is judicial in nature and involves important state interests.

*Younger*, 401 U.S. at 41.  The *Younger* doctrine rests both on equitable principles and on concerns for comity and federalism.  *Ohio Civil Rights Comm'n v. Dayton Christian Sch., Inc.*, 477 U.S. 619, 626-27 (1986); *Worldwide Moving & Storage, Inc. v. District of Columbia*, 445 F.3d 422, 425 (D.C. Cir. 2006).  *Younger* precludes federal adjudication when three criteria are met:  (1) there are ongoing state proceedings that are judicial in nature; (2) the state proceedings implicate important state interests; and (3) the proceedings afford an adequate opportunity to raise the federal claims.  *Bridges v. Kelly*, 84 F.3d 470, 476 (D.C. Cir. 1996).

In a case similar to this one, the Third Circuit held that a federal court should

abstain from interfering in an ongoing child support proceeding under *Younger*.  *See Dixon v. Kuhn*, 257 Fed. Appx. 553 (3d Cir. 2007).  The court explained that a party subject to a child support order is a party to an open case that does not terminate until the child support order is finally discharged.  *Id*. at 555.  States have an overriding interest in ordering and enforcing child support obligations.  *Id*.  And a party in a child support proceeding can raise any federal constitutional claims he may have.  *Id*.  *Accord Agustin v. County of Alameda*, 234 Fed. Appx. 521, 522 (9th Cir. 2007) (under *Younger*, federal district court properly dismissed suit challenging a state court action to collect child support); *Tindall v. Wayne County Friend of Court*, 269 F.3d 533, 538-40 (6th Cir.  2001) (district court must abstain under *Younger* from granting declaratory or injunctive relief sought by the plaintiff who claimed that the state's procedures for collecting child support were unconstitutional).

This suit meets the three criteria for *Younger* abstention.  First, Mr. Delaney is subject to an ongoing child support order.  *See* Compl. ¶ 17 ("Mr. Delaney is arrears of child support orders for two former children in the District of Columbia.").  Further, the District has an overriding interest in enforcement of child support obligations.  Finally, Mr. Delaney can bring his due process challenge before the D.C. Superior Court as a defense in any proceeding to enforce his child support obligations.  *See JMM Corp.*, 378 F.3d at 1121 & 1127 (a defendant in a District of Columbia proceeding has an opportunity to raise constitutional claims as defenses).

### 3.  Quasi-Judicial and Prosecutorial Immunity From Liability for Due Process Claims under Counts 1, 4, and 5

Mr. Delaney also seeks monetary damages for the alleged infringement of his Fifth Amendment due process right.  He asserts that he was subjected to "false" court orders,

improper calculation of his probation period, erroneous hearing notices, the court's failure to put court documents in the correct file, incorrect posting of child support payments, and an inappropriate refusal to engage in plea bargaining.

These claims are barred by quasi-judicial and prosecutorial immunity. Judges have absolute immunity from any lawsuit arising from the performance of judicial functions. *Forrester v. White*, 484 U.S. 219, 225 (1988). Such "[i]mmunity is defined by the *functions* it protects and not by the person to whom it attaches." *Id.* at 227. Immunity "applies to all acts of auxiliary court personnel that are basic and integral parts of the judicial function." *Sindram v. Suda*, 986 F.2d 1459, 1461 (D.C. Cir. 1993). "Suits against clerks for damages, like those against judges, are generally not necessary to control unconstitutional conduct in light of the numerous safeguards that are built into the judicial process, especially the correctability of error on appeal." *Id.* (internal quotation marks and citation omitted). Thus, others who perform judicial functions enjoy quasi-judicial absolute immunity, including law clerks and court clerks. *Wagshal v. Foster*, 28 F.3d 1249, (D.C. Cir. 1994) (law clerks); *Sindram*, 986 F.2d at 1461 (court clerks). For example, the scheduling of hearings is protected by absolute immunity. *Doyle v. Camelot Care Ctrs., Inc.*, 305 F.3d 603, 622 (7th Cir. 2002).

Further, a prosecutor who acts within the scope of his duties also has absolute immunity in an action for damages under § 1983, *Imbler v. Pachtman*, 424 U.S. 409 (1976), and the decision regarding whether to offer a plea bargain falls well within a prosecutor's discretion. *Young v. U.S. ex rel. Vuitton et Fils S.A.*, 481 U.S.787, 807 (1987); *accord District of Columbia v. Economides*, 968 A.2d 1032, 1036 (D.C. 2009).

Mr. Delaney's claims regarding alleged "false" court orders, improper calculation

of probation period, erroneous hearing notices, the failure to put court documents in the correct file, incorrect posting of child support payments, and refusal to plea bargain are barred by quasi-judicial and prosecutorial immunity.

Accordingly, under the domestic relations exception, the *Younger* abstention doctrine, and immunity, Counts 1, 4, and 5 of the Complaint will be dismissed.[8]

### 4. First Amendment Claim (Count 6)

Count 6 of the Complaint alleges that the District violated Ms. Shuler's First Amendment rights when "the District published an affidavit of Mr. Delaney's former attorney, Larry Williams, in its Motion in Opposition to Mr. Delaney's Motion for New Trial that Ms. Shuler should not have been called as a witness based on her speech." Compl. ¶ 103. Ms. Shuler asserts that she criticized the D.C. Child Support Services Division, stating that the Division has a "history and pattern of not following the law," *id.* ¶ 105, and that the District prevented her from testifying because of her criticism, thus denying her right to free speech. *Id.* ¶¶ 104-107.

A criminal defendant has a due process right to testify on his own behalf. *See, e.g., Cooper v. Oklahoma*, 517 U.S. 348, 354 (1996). Also, a government employee who testifies truthfully as a witness is protected by the First Amendment and may not be fired or subjected to any other adverse action based on such testimony. *See Worrell v. Henry*, 219 F.3d 1197, 1204

---

[8] Count 5 also contains a nonsensical claim by Ms. Shuler that the District violated her right to due process by discriminating against her on the basis of gender "when it filed an affidavit in its Motion in Opposition to Mr. Delaney's Motion for a New Trial because the district has a pre-conceived notion that black, females encourage males they are in relationships with or married to not [sic] pay child support." Compl. ¶ 101. There is no allegation regarding how the mere filing of an affidavit caused Ms. Shuler to suffer adverse consequences nor is it apparent how the filing could have violated any right to substantive or procedural due process. This allegation will be dismissed for failure to state a claim.

(10th Cir. 2000).  However, these rights do not translate into a third-party's right to testify at a

criminal trial. If the prosecutor chose not to call Ms. Shuler, that was within the scope of his

prosecutorial discretion in making his case.  *See Imbler*, 424 U.S. 409.  If Mr. Delaney's lawyer

chose not to call Ms. Shuler, that was within the exercise of his discretion in protecting his client.

Any ruling by the Superior Court judge regarding who was permitted to testify at the trial against

Mr. Delaney on the contempt charge is entitled to absolute judicial immunity.  *See Forrester*, 484

U.S. at 225.  Count 6 fails to state a claim and will be dismissed.

### 5.  First Amendment Right to Access the Court (Count 10)

In the first portion of Count 10 of the Complaint, Mr. Delaney alleges that his

right to access the court was violated when:  (1) he was incarcerated in 2007-08 and the DOC

refused to assist him in filing motions for modification of child support; (2) DOC refused to give

him stamps, paper, and pens to write motions for modification of child support; and (3) he was

incarcerated in 2001-03 and an unnamed person told him there was nothing he could do to

modify the support orders.  Compl. ¶¶ 141-43 (part of Count 10).[9]  A claim for denial of access

may be brought where (1) systemic official action frustrates a plaintiff in preparing and filing

suits, such as denial of access to a law library or (2) official action precludes a claim resulting in

the loss or inadequate settlement of a meritorious case or the loss of the opportunity to bring suit.

*Christopher v. Harbury*, 536 U.S. 403, 412-14 (2002).  Mr. Delaney does not state a claim for

denial of access under either of these scenaria.  Mr. Delaney did not seek to become a plaintiff in

a suit; he was subject to a child support order and he was a defendant in an enforcement

proceeding.  Thus, Mr. Delaney's claim does not fall under the first category.  Second, the child

---

[9] The Complaint does not state which defendant(s) is/are allegedly liable on this claim.

support order is ongoing and Mr. Delaney's failure to file a motion to modify the order has not

been rendered moot nor has Mr. Delaney somehow lost the right to seek modification of the child

support order.  Accordingly, this portion of Count 10 will be dismissed.

### 6. First Amendment Retaliation (Count 10)

In the second portion of Count 10 of the Complaint, Ms. Shuler alleges that

Captain Talley refused to allow her to visit Mr. Delaney or her other clients in the D.C. Jail

because she criticized the inconsistent search of attorneys at the Jail.  Compl. ¶¶ 144-48 (part of

Count 10).  She alleges that this violated her rights under the First Amendment.

The government may not punish a person or deprive him of a benefit on the basis

of his "constitutionally protected speech."  *Perry v. Sindermann*, 408 U.S. 593, 597 (1972).  Ms.

Shuler has not alleged that she was punished.  Instead, she asserts that she was deprived of her

"right" to visit her husband while he was incarcerated in the D.C. Jail.  But there is no "right" to

visit someone who is incarcerated.  "Inmates have no right to unfettered visitation." *Peterson v.*

*Shanks*, 149 F.3d 1140, 1145 (10th Cir. 1998) (citing *Kentucky Dep't of Corr. v. Thompson*, 490

U.S. 454, 460 (1989)).  And prison officials necessarily have broad discretion in controlling

visitor access.  *Id.*; *Ramons v. Lamm*, 639 F.2d 559, 580 (10th Cir. 1980).

> Because the running of a penal institution is both complex and
> difficult, prison administrators are to be "accorded wide-ranging
> deference" in adopting and executing policies and practices which,
> in their judgment, are necessary to preserve internal order and
> discipline and to maintain institutional security.

*Ramons*, 639 F.2d at 580.  Ms. Shuler has failed to state a claim for First Amendment retaliation

and Count 10 will be dismissed in its entirety.[10]

### 7.  Fourth Amendment Unreasonable Seizure (Count 11)

Ms. Shuler alleges in Count 11 of the Complaint that on July 26, 2007, she was ready to exit the visiting area at the D.C. Jail when an "unknown Correctional Officer" required her to wait to speak to Captain Talley before leaving.  Compl. ¶¶ 149-53.  She contends that because the officers required her to wait, she was unreasonably seized in violation of the Fourth Amendment.  *Id.*

It is highly questionable that a mere request to wait, without more, alleges a constitutional violation of any sort.  Even if it did, the claim fails because Ms. Shuler does not allege that an official custom or policy caused the constitutional violation.  In order to state a claim against a municipality under § 1983, a plaintiff must show that the municipality, through an official custom, practice, or policy, caused the alleged constitutional violation.  *Monell*, 436 U.S. at 690-95 (1978); *Triplett v. District of Columbia*, 108 F.3d 1450, 1453 (D.C. Cir. 1997) (plaintiffs must prove that the constitutional tort was an "action pursuant to official municipal policy").  Further, an allegation of a single incident does not evidence such a policy.  *See Pembaur v. City of Cincinnati*, 475 U.S. 469, 478 n.6 (1986) (municipal liability cannot be imposed for a single incident of unconstitutional conduct).  The Complaint makes no allegation of any official custom, practice, or policy that caused the alleged constitutional violation and it

---

[10] Neither could Ms. Shuler state a Sixth Amendment claim relating to the alleged barring of her visits to the D.C. Jail.  The Sixth Amendment protects the right to counsel, a right that belongs to the client.  It does not protect an attorney's right to serve as counsel.  *See In re Grand Jury Subpoena*, 62 F.3d 1144, 145-46 (9th Cir. 1995) ("Appellants [lawyers] have not identified any right of their own that has been affected . . . .  Instead, by their own account, they seek to protect their client's right to counsel of his choice.")

only alleges a single incident.  Thus, this claim must be dismissed as against the District under

*Monell*.  Inasmuch as Count 11 does not assert a claim against any named individual, it will be

dismissed.

### 8.  Fifth Amendment Due Process (Count 12)

Count 12 alleges that the District Defendants are liable because Captain Talley

refuses to allow Ms. Shuler to visit clients in the D.C. Jail on June 4, 2007 and July 27, 2007

based on Ms. Shuler's gender (female) and race (African-American).  *See* Compl. ¶¶ 155 & 160.

Count 12 asserts that this amounted to discrimination in violation of the equal protection

component of the Due Process Clause of the Fifth Amendment.[11]  *Id*. ¶¶ 154-60.  The Complaint

alleges:

> 157.  Discrimination based on race when Ms. Shuler was treated
> different that [sic] other persons solely based on race, because the
> DOC do [sic] not monitor persons of other races, selection of
> monitoring based on race, did not check the verification of cases to
> determine if attorney's [sic] were attorney's [sic] on record before
> July of 2007, do not inquire about documents or items shown to
> inmates, do not follow, harass, insult, defame character, state will
> call bar association or counsel to have something done to the
> persons based solely on their race.
>
> . . .
>
> 159.  If the Plaintiff was of another sex or race these incidents from
> June 2007 to September of 2007, would not have occurred. [The
> District Defendants] had and have a policy, practice and custom of
> discriminating against young, black and/or African-American
> males [sic] by:
>
> a.  targeting, young, black female attorneys by constant

---

[11] The Due Process Clause of the 5th Amendment applies to the District of Columbia, and
it imposes the same equal protection requirements as the Fourteenth Amendment imposes on the
states.  *Bolling v. Sharpe*, 347 U.S. 497, 499 (1954).

surveillance [sic] the communication between the client and the attorney, questioning the purpose [sic] of the attorney visit and reviewing the paper work of the attorney during the visitation without taking the same action of other attorneys attorney [sic] and failing to have a penological interest or any other legally justified basis but only have knowledge that the attorney is [sic] females are black and/or African-American, young,

b.  continuously refusing to get young, black females property locked in the locker but having not [sic] difficulty in getting the property of older persons of other races, ethnicities and sexes property without a problem.

. . .

e. denying or interfering with young, black females rights to enjoy privileges other citizens of different races, cultural ethnicities, and male citizens enjoy without any legally penological or sufficient basis; those privileges includes [sic] being able consult with their clients at the D.C. Jail without having Correctional Officers interfere with or deny young, black females the same privileges other citizens are not denied or interfered with.

160.  As a result, . . . Ms. Shuler suffers from reoccurring headaches, loss of interest in visiting her clients incarcerated at the D.C. Jail which is a necessary consultation of her clients [sic], unusual irritability and a diminished ability to think or concentrate, inconvenience, annoyance, humiliation, embarrassment, nervousness, and injury to her reputation.

Compl. ¶¶ 157-60.  Count 12 alleges that Captain Talley acted pursuant to a custom or policy of

the District of Columbia and thus that both the District and Captain Talley are liable.  *See id*. ¶¶

159.

The District Defendants contend that Count 12 sets forth conclusory allegations

that fail to state a claim.  *See Twombly*, 550 U.S. at 555; *see also Fame Jeans*, 525 F.3d at 16 n.4

("[A] complaint needs *some* information about the circumstances giving rise to the claims.");

*Crawford-El v. Britton*, 523 U.S. 574, 598 (1998) (a court may require a plaintiff to put forward

specific, nonconclusory factual allegations that establish improper motive).

While the facts alleged in the Complaint are scanty, Count 12 sufficiently states a

claim for relief under the equal protection component of the Fifth Amendment.  Whether such a

claim can survive summary judgment has yet to be determined.  Accordingly, the District

Defendants' motion to dismiss Count 12 will be denied.

### 9.  Fifth Amendment Due Process (Count 13)

In Count 13, Ms. Shuler contends that the denial of access to Mr. Delaney and

other clients deprived her of her "right to pursue employment."  *Id.* ¶ 162.  "Process is not an end

in itself.  Its constitutional purpose is to protect a substantive interest to which the individual has

a legitimate claim of entitlement."  *Olim v. Wakinekona*, 461 U.S. 238, 250 (1983).  It is well

settled that there is no constitutionally protected right to employment absent a property interest

— and a property interest arises only when a plaintiff has a legitimate claim of entitlement to a

job rather than a unilateral expectation or desire for it.  *Bd. of Regents v. Roth*, 408 U.S. 564, 577

(1972).  Ms. Shuler does not assert a legitimate claim of entitlement to represent any particular

client or to hold any particular job; she has not stated a due process claim for deprivation of a

property interest.  Count 13 will be dismissed.

### 10.  Fifth Amendment Due Process (Count 14)

In Count 14, Mr. Delaney contends that his due process right was violated when

he was incarcerated in the D.C. Jail and correctional officers refused to let his infant son, M.

Delaney, visit him from July of 2007 to September 25, 2007.  *See* Compl. ¶¶ 164-65, 196, & 198.

He claims that this was done in retaliation for starting an organization in the Jail to collect

information about the maltreatment of inmates.  *Id.* ¶ 165.  Mr. Delaney alleges that "when the

infant child visited with Mr. Delaney the infant child [sic] emotional problems stopped but continued after the D.C. Jail had an [sic] lock-down of the entire jail and not only was the child unable to visit his father for weeks before the lock down but now the infant child could not even talk with his father." *Id*. ¶ 197.  Jail inmates have no right to unfettered visitation. *Kentucky Dep't of Corr.*, 490 U.S. at 460.  And, as noted above, prison officials have broad discretion in controlling visitor access. *Peterson*, 149 F.3d at 1145; *Ramons*, 639 F.2d at 580.  Because Mr. Delaney had no protected "right" to receive visitors while he was incarcerated, he also had no right to due process when such visitation was curtailed.   *See Olim*, 461 U.S. at 250 (due process protects substantive interests to which the individual has a legitimate claim of entitlement).  The Court will dismiss Count 14.

### 11.  Fifth Amendment Due Process (Count 15)

M. Delaney claims that his Fifth Amendment due process right was violated when the District refused to allow him to visit his father when Mr. Delaney was in the D.C. Jail. Compl. ¶¶ 172-74 (Count 15).  As explained above, prison officials have broad discretion in controlling visitor access. *Peterson*, 149 F.3d at 1145; *Ramons*, 639 F.2d at 580.  The infant child, M. Delaney, had no "right" to visit inmates in the Jail, even his father.  Because M. Delaney fails to allege the violation of any right, the Fifth Amendment due process claim set forth in Count 15 will be dismissed

### 12.  Sixth Amendment Right to Counsel and Fifth Amendment Due Process (Count 19)

Plaintiffs also allege that the District has a poorly funded system for appointing attorneys to indigent defendants in criminal cases.  Plaintiffs complain generally that appointed

counsel have overwhelming case loads, causing them to fail to meet often enough or long enough with their clients, to fail to investigate their cases adequately, and to fail to prepare properly for court appearances. Compl. ¶¶ 202-24. Both Ms. Shuler and Mr. Delaney contend that counsel appointed to them in criminal cases were inadequate.[12] Ms. Shuler contends that her attorney, Martha Dickey, moved to withdraw based on false allegations that Ms. Shuler was harassing her. *Id*. ¶ 208. Mr. Delaney alleges that his attorney, Larry Williams, failed to investigate the case properly, failed to pursue a plea bargain, and failed to prepare for trial properly. *Id*. ¶¶ 213-20. Mr. Delaney also contends that he was appointed new counsel post-trial, Stuart Johnson, and that Mr. Johnson also failed to investigate or prepare. *Id*. ¶¶ 221-22. Plaintiffs allege that D.C. violated their Sixth and Fifth Amendment rights by appointing inadequate counsel.

      With regard to Plaintiffs' general complaints, Plaintiffs lack standing to make these claims on behalf of all indigent defendants in the District. "When the asserted harm is a 'generalized grievance' shared in substantially equal measure by all or a large class of citizens, that harm alone normally does not warrant exercise of jurisdiction." *Warth v. Seldin*, 422 U.S. 490, 499 (1975).

      With regard to Plaintiffs' complaints about the specific counsel appointed to them, these allegations do not support a § 1983 claim. A court-appointed attorney does not act under color of state law when performing a lawyer's traditional function as counsel to a

---

[12] As explained previously, Mr. Delaney was charged with criminal contempt due to his failure to pay child support. Ms. Shuler was arrested on April 16, 2005 and charged with simple assault. Compl. ¶ 207

defendant in a criminal proceeding. *Polk County v. Dodson*, 454 U.S. 312, 325 (1981);[13] *see West*, 487 U.S. at 48 (to prove a claim under § 1983, a plaintiff must plead and prove that the defendants, acting under color of state law, deprived the plaintiff of a constitutional right). Count 19 also fails to state a claim and will be dismissed.

### C. Supplemental Jurisdiction Over Local Law Claims (Counts 2, 3, 7, 16, 17, 18, & 20)

To determine when jurisdiction over a local law claim is appropriate, a court must determine whether the local law claims are part of the same controversy as the federal law claims, *i.e.*, whether they "derive from a common nucleus of operative fact." *United Mine Workers v. Gibbs*, 383 U.S. 715, 725 (1966); *accord Decatur Liquors, Inc. v. District of Columbia*, 478 F.3d 360, 362 (D.C. Cir. 2007). If the local law claims are part of the same controversy, the court then should decide whether it will exercise its discretion to assert jurisdiction over the local law claims, considering judicial economy, convenience, and fairness to the litigants, *Gibbs*, 383 U.S. at 725-26, as well as comity between federal and state courts. *Carnegie-Mellon Univ. v. Cohill*, 484 U.S. 343, 350 n.7 (1988); *see also Stevenson v. Severs*, 158 F.3d 1332, 1334 (D.C. Cir. 1998). Congress essentially codified *Gibbs* in 28 U.S.C. § 1367. *Edmondson & Gallagher v. Alban Towers Tenants Ass'n*, 48 F.3d 1260, 1266 (D.C. Cir. 1995). Section 1367(a) provides that "the district courts shall have supplemental jurisdiction over all other claims that are so related to claims in the action within such original jurisdiction that they form part of the same case or controversy." Section 1367(c)(3) provides that a district court may

---

[13] A plaintiff may sue an individual attorney for malpractice or may assert ineffective assistance of counsel as the basis for a petition for habeas corpus. *Polk County*, 454 U.S. at 325 n.18.

decline to exercise supplemental jurisdiction over a local law claim if the federal court has dismissed all claims over which it had original jurisdiction.  28 U.S.C. § 1367(c)(3).

Having dismissed every federal law claim other than Count 12 (Ms. Shuler's claim for violation of the equal protection component of the Fifth Amendment due to the alleged denial of visitation to the D.C. Jail based on her race and gender), it is appropriate to decline supplemental jurisdiction over all the local law claims in the Complaint.  The equal protection claim shares no common nucleus of operative fact with the local law claims.  *See Gibbs*, 383 U.S. at 725; 28 U.S.C. § 1367(a).  The Court will decline supplemental jurisdiction and dismiss without prejudice all of local law claims set forth in the Complaint:  Counts 2 (fraud), 3 (fraud related to paternity), 7 (negligence), 16 (defamation, libel, and slander), 17 (defamation), 18 (intentional infliction of emotional distress), and 20 (legal malpractice).

### D.  Remaining Defendants

Although the motion to dismiss was filed only on behalf of the District Defendants, this Memorandum Opinion necessitates dismissal of this action against all Defendants other than the District and Captain Talley, who are alleged to be liable in Count 12. The Complaint alleges claims against Bernadette White[14] and Larry Williams.[15]  *See* Compl. ¶¶ 70- 74 (Count 3, fraud related to paternity against White), ¶¶ 180-83 (Count 17, defamation against White), ¶¶ 212-20 (Count 19, Fifth and Sixth Amendments against Williams), & ¶¶ 225-47 (Count 20, legal malpractice against Williams).  Further, the Complaint names as defendants

---

[14] Ms. White is the mother of child(ren) for which Mr. Delaney failed to pay child support.

[15] Mr. Williams is an attorney who was appointed to represent Mr. Delaney in Superior Court on the criminal contempt charge.

Robert Smith and Walter Sellers, who Plaintiffs allege were DOC employees.  DOC records show no Robert Smith or Walter Sellers were ever employed there.  The Complaint also purports to bring suit against "other unknown Correctional Officers" and "other unknown D.C. employees."  *See* Compl. ¶¶ 10 & 11.  Ms. White, Mr. Williams, Mr. Smith, Mr. Sellers, and the unknown defendants are all dismissed from this case without prejudice.[16]

## IV.  CONCLUSION

For the reasons set forth above, the District Defendants' motion to dismiss [Dkt. # 48] will be granted in part and denied in part.  All federal law claims other than Count 12 will be dismissed.  All local law claims will be dismissed without prejudice.  The only remaining claim is Count 12, Ms. Shuler's claim for violation of the equal protection component of the Fifth Amendment due to the alleged denial of visitation to the D.C. Jail based on her race and gender.   All defendants other than the District of Columbia and Captain Nora Talley, in her personal capacity, are dismissed.  Also, Plaintiffs Melvin Delaney and M. Delaney are dismissed as parties to his case.  A memorializing Order accompanies this Memorandum Opinion.


Date: October 6, 2009                                 _____/s/_____
                                                      ROSEMARY M. COLLYER
                                                      United States District Judge

---

[16] The Court previously dismissed defendants Ferris Bond, William Morrison, and Stuart Johnson and those portions of the Complaint relating to them.  *See* Order filed May 1, 2009 [Dkt. # 41] (dismissing ¶¶ 248-70 of Count 20 relating to malpractice claims).  The Court also dismissed Shoppers Food Warehouse Corporation and United Food and Commercial Workers Union Local 400.  *See* Mem. Op. & Order filed May 4, 2009 [Dkt. ## 42 & 44] (dismissing ¶¶ 117-20 of Count 7 and  ¶¶ 121-39 and Counts 8 and 9 in their entirety).