UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

|  |  |  |
|---|---|---|
| MELODIE SHULER, | ) | |
| Plaintiff, | ) ) ) | |
| v. | ) ) | Civil Action No. 08-1651 (RMC) |
| DISTRICT OF COLUMBIA, *et al.*, | ) ) ) | |
| Defendants. | ) ) ) | |

**MEMORANDUM OPINION**

Melodie Venee Shuler brought this suit *pro se* against D.C. Department of Corrections Captain Nora Talley and the District of Columbia, alleging violation of the equal protection component of the Fifth Amendment due to Captain Talley's alleged refusal to allow Ms. Shuler to visit her husband at the D.C. Jail. Ms. Shuler claims she was denied the right to visit based on her race and gender. Captain Talley and the District now move for summary judgment, because there is no evidence of discriminatory purpose and because there is no evidence of an unconstitutional custom or policy. As explained below, the motion will be granted.

**I. FACTS**

Ms. Shuler's claim[1] generally arises from a District of Columbia criminal

---

[1] The Complaint consisted of 21 counts against sixteen defendants and various John Does; it alleges numerous violations of federal and local law, mostly arising from Ms. Shuler's husband's failure to pay child support and a resulting criminal contempt charge against him. This Court previously dismissed all defendants other than Captain Talley and the District and all counts other

contempt action against her husband, Melvin Delaney,[2] and from difficulties Ms. Shuler encountered when she attempted to visit Mr. Delaney while he was held at the D.C. Jail. Mr. Delaney was incarcerated at the D.C. Jail from May 29, 2007 to September 25, 2007. Compl. ¶¶ 19-20. Ms. Shuler is an attorney, and she sought to assist Mr. Delaney in dealing with his legal problems.

Count 12 of the Complaint alleges that the District and Captain Talley are liable for violating Ms. Shuler's right to equal protection because Captain Talley refused to allow Ms. Shuler to visit Mr. Delaney in the D.C. Jail on June 4, 2007 and July 27, 2007 based on Ms. Shuler's gender (female) and race (African-American). *See* Compl. ¶¶ 155-60. More specifically, that portion of the Complaint alleges:

> 157. Discrimination based on race when Ms. Shuler was treated different that other persons solely based on race, because the DOC do not monitor persons of other races, selection of monitoring based on race, did not check the verification of cases to determine if attorney's were attorney's on record before July of 2007, do not inquire about documents or items shown to inmates, do not follow, harass, insult, defame character, state will call bar association or counsel to have something done to the persons based solely on their race.
>
> . . .
>
> 159. If the Plaintiff was of another sex or race these incidents from

---

than Count 12. *See* Order filed May 1, 2009 [Dkt. # 41] (dismissing defendants Ferris Bond, William Morrison, and Stuart Johnson and those portions of the Complaint relating to them); Mem. Op. & Order filed May 4, 2009 [Dkt. ## 42 & 44] (dismissing Shoppers Food Warehouse Corporation and United Food and Commercial Workers Union Local 400 and those portions of the Complaint relating to them); Mem. Op. & Order filed Oct. 6, 2009 [Dkt. ## 54 & 55] (dismissing remaining claims and parties, other than Count 12 against Captain Talley and the District).

[2] Mr. Delaney was charged with criminal contempt due to his failure to pay child support to Bernadette White, the mother of certain of his children.

> June 2007 to September of 2007, would not have occurred. Several Correctiona Officers, including the defendant Captain Nora Talley . . . and the District of Columbia had and have a policy, practice and custom of discriminating against young, black and/or African-American males by:
>
> a. targeting, young, black female attorneys by constant surveillance the communication between the client and the attorney, questioning the purpose of the attorney visit and reviewing the paper work of the attorney during the visitation without taking the same action of other attorneys [sic] [ ] and failing to have a penological interest or any other legally justified basis but only have knowledge that the attorney is females are black and/or African-American, young,
>
> b. continuously refusing to get young, black females property locked in the locker but having not [sic] difficulty in getting the property of older persons of other races, ethnicities and sexes property without a problem.
>
> . . .
>
> e. denying or interfering with young, black females rights to enjoy privileges other citizens of different races, cultural ethnicities, and male citizens enjoy without any legally penological or sufficient basis; those privileges include[ ] being able consult with their clients at the D.C. Jail without having Correctional Officers interfere with or deny young, black females the same privileges other citizens are not denied or interfered with.
>
> . . . .
>
> 160. As a result of the Defendants' intentional, reckless, and malicious disregard for the Plaintiff's rights Ms. Shuler suffered on or about June 4, 2007 and July 27, 2007, . . . Ms. Shuler suffers from reoccurring headaches, loss of interest in visiting her clients incarcerated at the D.C. Jail which is a necessary consultation of her clients, unusual irritability and a diminished ability to think or concentrate, inconvenience, annoyance, humiliation, embarrassment, nervousness, and injury to her reputation.

*Id*. ¶¶ 157-60 (errors in original). Count 12 alleges that Captain Talley acted pursuant to a custom or policy of the District of Columbia and thus that both the District and Captain Talley

are liable. *See id*. ¶ 159.

## II. LEGAL STANDARDS

Under Rule 56 of the Federal Rules of Civil Procedure, summary judgment must be granted when "the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56 (c); *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247 (1986); *see also Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). Moreover, summary judgment is properly granted against a party that "after adequate time for discovery and upon motion . . . fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Celotex*, 477 U.S. at 322. To determine which facts are "material," a court must look to the substantive law on which each claim rests. *Anderson*, 477 U.S. at 248 (1986). A "genuine issue" is one whose resolution could establish an element of a claim or defense and, therefore, affect the outcome of the action. *Id.*; *Celotex*, 477 U.S. at 322.

In ruling on a motion for summary judgment, the court must draw all justifiable inferences in the nonmoving party's favor and accept the nonmoving party's evidence as true. *Anderson*, 477 U.S. at 255. A nonmoving party, however, must establish more than "the mere existence of a scintilla of evidence" in support of its position. *Id.* at 252. To prevail on a motion for summary judgment, the moving party must show that the nonmoving party "fail[ed] to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Celotex*, 477 U.S. at 322. By pointing to the absence of evidence proffered by the nonmoving party, a moving party may succeed on

summary judgment. *Id.* In addition, the nonmoving party may not rely solely on allegations or conclusory statements. *Greene v. Dalton*, 164 F.3d 671, 675 (D.C. Cir. 1999). Rather, the nonmoving party must present specific facts that would enable a reasonable jury to find in its favor. *Id.* at 675. If the evidence "is merely colorable, or is not significantly probative, summary judgment may be granted." *Anderson*, 477 U.S. at 249-50 (citations omitted).

### III. ANALYSIS

#### A. Fifth Amendment Equal Protection

Count 12 of the Complaint alleges discrimination in violation of the equal protection component of the Due Process Clause of the Fifth Amendment. Ms. Shuler asserts that the District and Captain Talley are liable because Captain Talley refused to allow Ms. Shuler to visit clients in the D.C. Jail on June 4, 2007 and July 27, 2007 based on Ms. Shuler's gender (female) and race (African-American). *See* Compl. ¶¶ 155– 160.

Plaintiff seeks to hold the District and Captain Talley liable under 42 U.S.C. § 1983, which provides:

> Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory or the District of Columbia, subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress.

42 U.S.C. § 1983. To prevail in a civil rights action under § 1983, a plaintiff must plead and prove that the defendants, acting under color of state or D.C. law, deprived the plaintiff of a right secured by the Constitution and laws of the United States. *West v. Atkins*, 487 U.S. 42, 48 (1988); *Parratt v. Taylor*, 451 U.S. 527 (1981), *overruled in part on other grounds*, *Daniels v.*

*Williams*, 474 U.S. 327 (1986).

The Fifth Amendment provides in pertinent part that no person "shall be deprived of life, liberty, or property, without due process of law . . . ." U.S. Const. amend. V. The Fifth Amendment applies to the District of Columbia,[3] and it imposes the same equal protection requirements that the Fourteenth Amendment imposes on the states. *Bolling v. Sharpe*, 347 U.S. 497, 499 (1954).

"Where the claim is invidious discrimination in contravention of the . . . Fifth Amendment[] . . . the plaintiff must plead and prove that the defendant acted with discriminatory purpose . . . on account of race, religion, or national origin." *Ashcroft v. Iqbal*, 129 S. Ct. 1937, 1948 (2009); *see Village of Arlington Heights v. Metropolitan Housing Development Corp.*, 429 U.S. 252, 265 (1977) ("Proof of racially discriminatory intent or purpose is required to show a violation of the Equal Protection Clause."); *Washington v. Davis*, 426 U.S. 229, 240-45 (1976) (to state a claim for violation of equal protection, a plaintiff must allege an improper motive and not merely a discriminatory impact). The equal protection clause protects against the government's treating individuals differently from other similarly situated individuals. *Women Prisoners of the D.C. Dep't of Corr. v. Dist. of Columbia*, 93 F.3d 910, 924 (D.C. Cir. 1996). "The dissimilar treatment of dissimilarly situated persons does not violate equal protection." *Id.*

Ms. Shuler alleges that she went to the D.C. Jail sometime in June 2007, to visit a client, Ronald Witing, and her husband, Melvin Delaney. Defs.' Mot. for Summ. J., Ex. A

---

[3] Because the District of Columbia is a political entity created by the federal government, it is subject to the Fifth Amendment and not the Fourteenth, which applies to the States. *Propert v. District of Columbia*, 948 F.2d 1327, 1330 n.5 (D.C. Cir. 1991).

("Shuler Dep.") at 54, 83.[4] That day, Ms. Shuler had a confrontation with a correctional officer allegedly named Walter Sellers. Ms. Shuler claims that during her visit with her husband, Officer Sellers interrupted, questioning Ms. Shuler's credentials as an attorney and claiming that women often came to the jail falsely claiming to represent an inmate:

> That correctional officer who had identified hisself as Walter Sellers he said that he wanted to talk to me and then when I came he was like, oh, you didn't have permission to come inside the correctional facility and so the conversation was like why are you visiting inmates, and so I was like, and this was in regards to post trial motions.
>
> It was like there are time limits on you that have to file post trial motions and he was, you don't know what you are talking about, you don't know the law, and I got legal training, an I was like where did you get your legal training at, are you an attorney and he said no.
>
> Then he was like that women would always be coming in here and saying they be representing someone when they were not representing a person.
>
> I was like what women are you talking about, and he said there was an incident when a lady came in here and she was an attorney, she was an attorney, but that she was the person's mother and she wasn't providing — She wasn't providing him with legal assistance, he went off on some little argument about women this women that.
>
> I was like, I don't really feel like going into all of that stuff because you don't know what you are talking about and so he was like, well, you don't need to be coming over here representing anybody and helping anybody to do something. They are just Black and stupid.

Shuler Dep. at 84-85. Ms. Shuler did not see Captain Talley that day:

> Q. Did you see Nora Talley that day at all?

---

[4] At her deposition, Ms. Shuler testified that the incident occurred on June 10 or 11, 2007, not on June 4, 2007, as she had alleged in her Complaint. Shuler Dep. at 99-100.

-7-

>   A. No, I don't think so.
>
>   Q. And you don't remember if her name was mentioned or not that day?
>
>   A. Yes, I don't think her name was mentioned that day.

*Id*. at 137. Ms. Shuler further asserts in support of her claim of discrimination:

> I have been there before and I would think too that it wasn't just those incidents of you know of my complaint that led up to saying that it was race.
>
> Like I be coming in here and they questioning me about what I am seeing my clients for, oh, let me see the paperwork. No, they do not treat other attorneys that way and I have talked to them, but I know when they were saying, oh, well, like when some other Black woman came in there so they associate something with Black women instead and an attorney who came in here.

*Id*. at 237 (errors in original). She does not allege that any discriminatory comments were made by Captain Talley.

>   Q. Were any of these comments about race and gender made by Captain Talley?
>
>   A. No.

*Id*. at 237-38.

Ms. Shuler asserts that she contacted the Deputy Warden of the D.C. Jail, Brenda Ward, sometime thereafter to complain about the interruption and termination of her visit with Mr. Delaney. Ms. Ward explained to Ms. Shuler that, as Mr. Delaney's wife, she could have personal non-contact visits ("in a booth") with him but she could not meet with him in both a personal and professional capacity. *Id*. at 139. Attorneys are permitted contact visits with their clients. *See id*.; *see also* Def.'s Mot. for Summ. J., Ex. B (Talley's Resp. to Req. for Admission) ¶ 3.

On July 27, 2007, Ms. Shuler went to the D.C. Jail to visit clients Ronald Witing, Melvin Delaney, Tyran Thompson, and Bruce Marshall. Shuler Dep. at 166. She met with Mr. Witing and then moved on to Mr. Delaney. *Id*. at 170. In the middle of her visit with Mr. Delaney, a correctional officer interrupted, telling her she had to leave the interview room and go talk to Captain Talley. *Id*. at 178-79. Captain Talley told Ms. Shuler that she had to leave and did not give an explanation:

> [S]o she was like saying you know what you just got to leave, I don't have to explain. I don't think she said like I can do whatever I want to do, she was like I don't have explain anything to you.

*Id*. at 189 (errors in original).

Ms. Shuler fails to point to evidence sufficient to raise a genuine issue of material fact in support of her equal protection claim. There is no evidence that Captain Talley terminated Ms. Shuler's visits with Mr. Delaney based on discriminatory purpose or intent. Captain Talley was not involved in the termination of Ms. Shuler's visit with her husband in June of 2007. Ms. Shuler did not see Captain Talley that day, and Captain Talley's name was not even mentioned. Instead, Ms. Shuler asserts that it was Officer Sellers who interrupted and ended her visit with her husband and that it was Officer Sellers, not Captain Talley, who made statements about women who falsely claimed to represent Jail inmates. While the Complaint originally named Officer Sellers as a defendant, Officer Sellers was dismissed without prejudice because the Jail has no record of anyone by that name who is, or was, an employee. Mem. Op. [Dkt. # 54] at 22.

With regard to the July 2007 visit to the Jail, Ms. Shuler states that Captain Talley terminated her visit with Mr. Delaney and that she did not give any explanation for terminating the visit. Ms. Shuler does not assert that Captain Talley made any discriminatory comments nor

does she point to any evidence that Captain Talley acted with discriminatory intent when she terminated the visit with Mr. Delaney. In fact, Ms. Shuler acknowledges that the Jail had a policy that was not based on race or gender — that is, Deputy Warden Ward explained that family members are permitted non-contact visits only. Ms. Shuler may well have been offended by statements made by someone at the Jail, but there is no evidence that Captain Talley made any offensive comments or that Captain Talley terminated Ms. Shuler's visits with her husband based on any discriminatory intent. Because Ms. Shuler has failed to make a showing sufficient to establish discriminatory purpose — a key element of an equal protection claim — summary judgment must be granted to Captain Talley and the District. *See Celotex*, 477 U.S. at 322.

### B. Custom or Policy

Even if Ms. Shuler had proffered evidence sufficient to support an equal protection claim, in order to impose liability on the District under 42 U.S.C. § 1983, she must show also that the District's custom or policy caused the violation. *Feirson v. District of Columbia*, 506 F.3d 1063, 1066 (D.C. Cir. 2007); *Baker v. District of Columbia*, 326 F.3d 1302, 1306 (D.C. Cir. 2003) (citing *Monell v. Dep't of Social Servs.*, 436 U.S. 658, 694 (1978)). There is no *respondeat superior* or vicarious liability under § 1983. *Burnett v. Sharma*, 511 F. Supp. 2d 136, 141 (D.D.C. 2007). With regard to a claim of failure to train, a city can be liable under § 1983 only where the failure to train reflects a deliberate or conscious choice by a municipality, *i.e.* a custom or policy. *City of Canton v. Harris*, 489 U.S. 378, 389 (1989).

Ms. Shuler has pointed to no custom or policy that caused the alleged constitutional violation. In opposition to Defendants' motion for summary judgment, she alleges that she "contacted other attorneys and two women one being black stated that they have been

treated differently than other white males by correctional employees and that a reason [sic] they do not like visiting inmates at the jail." Pl.'s Opp'n [Dkt. # 81] at 12. Ms. Shuler makes this bald allegation based on hearsay. "On summary judgment, statements that are impermissible hearsay or that are not based on personal knowledge are precluded from consideration by the [c]ourt." *Riggsbee v. Diversity Servs., Inc.*, 637 F. Supp. 2d 39, 46 (D.D.C. 2009); *see also Greer v. Paulson*, 505 F.3d 1306, 1315 (D.C. Cir. 2007) (a plaintiff's statements about another employee's comment was "sheer hearsay" that "counts for nothing" on summary judgment). Further, to oppose summary judgment successfully, a plaintiff may not rely solely on allegations; instead she is required to present specific facts that would enable a reasonable jury to find in her favor. *See Greene*, 164 F.3d at 675. Ms. Shuler's statements about what she heard other people say are hearsay that cannot be relied upon in opposing summary judgment. Even if the hearsay statements were admissible, Ms. Shuler still has not pointed to any evidence that the District had a custom or policy of treating women or African-Americans differently than others. Because Ms. Shuler has failed to present facts that would enable a jury to find in her favor, summary judgment must be granted in favor of the District of Columbia.

### IV. CONCLUSION

For the reasons set forth above, the Defendants' motion for summary judgment [Dkt. # 78] will be granted and this case will be dismissed. A memorializing Order accompanies this Memorandum Opinion.

Date: October 15, 2010　　　　　　　　　　　　/s/
　　　　　　　　　　　　　　　　　ROSEMARY M. COLLYER
　　　　　　　　　　　　　　　　　United States District Judge